UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MONIQUE MAIURANO,

                              Plaintiff,

              -v.-

CANTOR FITZGERALD SECURITIES,

                              Defendant.

---

19 Civ. 10042 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Monique Maiurano brings this action against Defendant Cantor Fitzgerald Securities ("Cantor") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e to 2000e-17, the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290-297, and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-107 to 8-131, alleging that she was sexually harassed and discriminated against by her supervisor at Cantor on the basis of her gender, and then terminated by Defendant in retaliation for reporting the sexual harassment. Plaintiff brings her Title VII claims under the Court's federal question jurisdiction, *see* 28 U.S.C. § 1331, and her NYSHRL and NYCHRL claims under the Court's supplemental jurisdiction, *see* 28 U.S.C. § 1367. The operative complaint is Plaintiff's Second Amended Complaint, filed on March 13, 2020, in which Plaintiff seeks, *inter alia*, lost pay and benefits, compensatory and punitive damages, reinstatement to her former position, and injunctive relief. Defendant has moved to dismiss the Second Amended Complaint for failure to state a claim upon which relief may be granted. For the reasons set forth below, the Court

grants Defendant's motion in part and denies it in part, but also grants leave to Plaintiff to replead certain of her claims.

## BACKGROUND[1]

### A.  Factual Background

Plaintiff began working as a Vice President at Cantor, a corporation headquartered in New York, New York, on or about May 22, 2017.  (SAC ¶¶ 7, 10).  Plaintiff's supervisor was Bradley Mass, Director of Client Management.  (*Id.* at ¶ 15).  Mass's interactions with Plaintiff, as alleged, were disturbing in several respects.  When socializing with Plaintiff, Mass purchased alcoholic beverages for Plaintiff, confided in Plaintiff about his sexual relations with his fiancée, and made comments about "see[ing] himself with Plaintiff" and taking their relationship "one step at a time."  (*Id.* at ¶¶ 16-18).  In or about August 2017, Mass texted Plaintiff to invite her to sleep at his home when his fiancée was away, and when Plaintiff declined, Mass asked where she lived and then called her and asked her to come to his home.  (*Id.* at ¶ 20).  Plaintiff rejected Mass's advances.  (*Id.* at ¶ 19).  Mass's fiancée, who did not work for Defendant, began phoning Plaintiff and, on December 1, 2017, threatened to have Plaintiff terminated.  (*Id.* at ¶ 21).  Shortly thereafter, Plaintiff reported Mass's conduct to Defendant's Human Resources Department.  (*Id.*).  Mass

---

[1]     The facts in this Opinion are drawn primarily from the well-pleaded allegations of Plaintiff's Second Amended Complaint ("SAC" (Dkt. #18)), which is the operative pleading in this case.  For ease of reference, the Court refers to Defendant's Memorandum of Law in Support of Its Motion to Dismiss the Second Amended Complaint as "Def. Br." (Dkt. #23); Plaintiff's Memorandum of Law in Opposition as "Pl. Opp." (Dkt. #24); and Defendant's Reply Memorandum of Law as "Def. Reply" (Dkt. #25).

subsequently "began to shun [Plaintiff], increased scrutiny of her work, and had his subordinates track Plaintiff and falsely accuse her." (*Id.* at ¶ 22). Plaintiff does not explain of what she was allegedly falsely accused.

In November 2017, Alec Wasserman, a more senior member of Plaintiff's department, asked Plaintiff to remove a restriction on an account for a few days until a trade hit the account, and then to re-restrict the account. (SAC ¶ 25). Plaintiff was reluctant to remove the account restrictions and sought to discuss Wasserman's request with Mass, but Mass stated that he was too busy. (*Id.* at ¶¶ 25-26). Plaintiff acquiesced to Wasserman's request and removed the account restrictions, but asked Wasserman to inform her when the trade hit so that she could reinstate the restrictions. (*Id.* at ¶¶ 27-28). Plaintiff departed on vacation before the trade was complete and accordingly asked Wasserman to re-restrict the account after the trade occurred, which he agreed to do. (*Id.* at ¶ 29). Plaintiff learned after returning to the office that Wasserman did not restore the restrictions on the account, so Plaintiff did so herself. (*Id.* at ¶ 31).

Plaintiff was later informed that the transaction and account in question, as well as many others, were being investigated due to compliance issues. (SAC ¶¶ 32-33). In January 2018, members of Defendant's Internal Audit Department reviewed the transaction with Plaintiff, during which review Plaintiff answered all questions and indicated that she had never received training for these issues. (*Id.* at ¶ 35). Defendant terminated Plaintiff on January 17, 2018, citing misconduct related to the account and transaction at issue. (*Id.* at ¶ 38).

B.     **Procedural History**

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on or about July 20, 2018.  (SAC ¶ 11).  The EEOC issued a Notice of Right to Sue letter on or about August 1, 2019, which Plaintiff received on or about August 3, 2019.  (*Id.* at ¶ 12).

Plaintiff filed the original Complaint on October 30, 2019 (Dkt. #1), and filed a First Amended Complaint on November 15, 2019 (Dkt. #5).  On January 14, 2020, Defendant filed a letter seeking leave to file a Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #11), and Plaintiff filed a letter in opposition on January 17, 2020 (Dkt. #12).  The Court held a pre-motion conference on February 21, 2020, during which conference the parties discussed Defendant's anticipated motion to dismiss.  Following that conference, Plaintiff submitted a Second Amended Complaint on March 19, 2020.  (Dkt. #18).  Defendant filed a letter on March 27, 2020, requesting that the Court set a briefing schedule on Defendant's anticipated motion to dismiss the Second Amended Complaint.  (Dkt. #19).  In accordance with the Court's memorandum endorsement dated March 27, 2020 (Dkt. #20), Defendant filed its Motion to Dismiss the Second Amended Complaint on April 27, 2020 (Dkt. #22-23); Plaintiff filed her opposition submission on May 27, 2020 (Dkt. #24); and Defendant filed its reply submission on June 10, 2020 (Dkt. #25).

## DISCUSSION

### A.     Applicable Law

To survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). "An employment discrimination complaint need not include [specific facts establishing a *prima facie* case of discrimination] and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 508 (2002) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Mandala* v. *NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020) ("Over a series of opinions, we clarified that *Iqbal* does not require a plaintiff to plead a *prima facie* case. Instead, it simply requires a plaintiff to 'assert [enough] nonconclusory factual matter ... to nudge [her] claim[ ] across the line from conceivable to plausible to proceed.'" (internal citations omitted)). The Court must accept as true all well-pleaded factual allegations in the complaint. *See Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B.     Analysis**

Plaintiff asserts six causes of action: (i) harassment and termination on the basis of gender, in violation of Title VII (SAC ¶¶ 14-40); (ii) retaliation for reporting sexual harassment, in violation of Title VII (*id.* at ¶¶ 45-48); (iii) harassment and termination on the basis of gender, in violation of § 296 of the NYSHRL (*id.* at ¶¶ 41-44); (iv) retaliation for reporting sexual harassment, in violation of the NYSHRL (*id.* at ¶¶ 49-50); (v) harassment and termination on the basis of gender, in violation of the NYCHRL (*id.* at ¶¶ 51-53); and (vi) retaliation for reporting sexual harassment, in violation of the NYCHRL (*id.* at ¶¶ 54-55).  In general, though with some caveats described below, the framework that applies to Plaintiff's unlawful employment practice claims is the same under Title VII and the NYSHRL.  *See Feliciano* v. *City of New York*, No. 14 Civ. 6751 (PAE), 2015 WL 4393163, at *4 (S.D.N.Y. July 15, 2015) ("The Court analyzes the claims under Title VII and the NYSHRL together, because the standards for liability under these statutes are the same."); *see also Summa* v. *Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013) (concluding, for purposes of determining existence of hostile work environment, that "[h]ostile work environment claims under both Title VII and the NYSHRL are governed by the same standard").  The NYCHRL standards, however, are lower than the federal or state standards.  *See, e.g., Mihalik* v. *Credit Agricole Cheuvreux N. Am.*, Inc., 715 F.3d 102, 109 (2d Cir. 2013).  Therefore, where a Title VII or NYSHRL

claim is dismissed, a separate analysis is needed to determine whether a parallel NYCHRL allegation states a claim.  *See id.*

For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion to Dismiss, though it also grants leave to Plaintiff to replead certain of the dismissed claims.

> **1.    Plaintiff Can Adequately Plead a *Quid Pro Quo* Sexual Harassment Claim Under Title VII and the NYSHRL, But Not a Hostile Work Environment or Discriminatory Termination Claim**

> **a.    Sexual Harassment**

In her opposition brief, Plaintiff argues that she adequately pleaded both hostile work environment and *quid pro quo* sexual harassment claims.  (Pl. Opp. 4-9).  Defendant replies that Plaintiff did not plead a *quid pro quo* harassment claim and "may not add one through the Opposition," and thus is confined to a hostile work environment claim.  (Def. Reply 3).  But Defendant draws a clear line between the two types of claims, where one does not exist as a matter of law.  The terms "*quid pro quo*" and "hostile work environment" do not appear in the text of Title VII, but rather are part of an analytical construct through which courts distinguish between, on the one hand, cases involving an executed promise or threat of a change in the conditions of employment based on the victim's response to harassment, which constitutes a *quid pro quo*, and on the other hand, severe and pervasive offensive conduct in general, which constitutes a hostile work environment.  *See Schiano* v. *Quality Payroll Sys., Inc.*, 445 F.3d 597, 603-04 (2d Cir. 2006); *see also Burlington Indus., Inc.* v.

*Ellerth*, 524 U.S. 742, 752 (1998) ("The principal significance of the distinction is to instruct that Title VII is violated by either explicit or constructive alterations in the terms or conditions of employment and to explain the latter must be severe or pervasive."). Because the distinctions do not appear in the statute itself, the Second Circuit has concluded that "it is most appropriate ... to look to the substance of the alleged misconduct of which the plaintiff complains rather than the terms used to describe it." Plaintiff's sexual harassment claims will survive a motion to dismiss if her pleading adequately alleges conduct that meets the criteria for either type of claim. Accordingly, the Court analyzes Plaintiff's allegations under both analytical frameworks.

### i.    Hostile Work Environment

To survive a motion to dismiss on a hostile work environment claim under Title VII, 42 U.S.C. § 2000e-2, or the NYSHRL, N.Y. Exec. Law § 296(1)(h), Plaintiff must adequately plead that: (i) "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (ii) "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Howley* v. *Town of Stratford*, 217 F.3d 141, 153-54 (2d Cir. 2000) (internal quotation marks and citations omitted).[2]

---

[2]    The Court analyzes Plaintiff's sexual harassment claims under Title VII and the NYSHRL together because the standards for employer liability under these statutes were the same at the time Plaintiff's claims accrued. See *Rojas* v. *Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (noting that with one exception not applicable to that case, "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII"). The relevant

8

*First,* in assessing whether or not a work environment was hostile, courts consider the totality of circumstances, including: "[i] the frequency of the discriminatory conduct; [ii] its severity; [iii] whether it is physically threatening or humiliating, or a mere offensive utterance; and [iv] whether it unreasonably interferes with an employee's work performance." *Harris* v. *Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive. The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted." *Raspardo* v. *Carlone,* 770 F.3d 97, 114 (2d Cir. 2014) (internal quotation marks and citations omitted).

Plaintiff alleges that Mass spoke with Plaintiff about his sexual relations with his fiancée and made romantic advances towards Plaintiff on several occasions over a period of months, telling Plaintiff they should take it "one step at a time" and inviting Plaintiff to sleep at his home while his fiancée was away. (SAC ¶¶ 17-20). Plaintiff rejected these advances. (*Id.* at ¶ 19). While Mass's

---

provision of the NYSHRL, § 296(1)(h), was amended, effective October 11, 2019, to eliminate the requirement that harassing or discriminatory conduct be "severe or pervasive" for it to be actionable and to adopt instead a more protective standard that prohibits conduct that results in "inferior terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(h). However, that amendment applies only to claims that accrue on or after the effective date. *See* N.Y. Senate Bill S6594/A8424 ("Sections one ... shall only apply to claims accrued under such sections on or after the effective date of such sections."). Plaintiff's claims accrued on or before January 17, 2018, when she was terminated by Defendant. The relevant conduct therefore all occurred before the effective date of the amended law and thus the pre-amendment framework applies.

alleged behavior was objectively unprofessional and subjectively objectionable to Plaintiff, there is nothing in Plaintiff's pleading that suggests that the incidents were more than episodic or were physically intrusive, threatening, or humiliating.  Furthermore, Plaintiff does not allege that Mass's conduct interfered unreasonably with her ability to do her job; instead, she insists that her job performance continued to be satisfactory, stating that neither Mass nor any other employee of Defendant issued "performance appraisals or evaluations which were critical of Plaintiff's work performance" or "disciplined Plaintiff for any alleged substandard work performance."  (*Id.* at ¶¶ 23-24). These allegations do not suggest a level of disruptive misconduct that courts have recognized as providing a basis for a claim under Title VII and the NYSHRL.  *See, e.g.*, *Holohan* v. *Newmark & Co. Real Estate, Inc.*, No. 18 Civ. 6275 (AJN), 2019 WL 4743883, at *2-4 (S.D.N.Y. Sept. 16, 2019) (dismissing hostile work environment claims based on occasional sexually suggestive "offensive utterances," two invasions of personal space, and one instance of brief offensive touching, over several months); *see also Mormol* v. *Costco Wholesale Corp.*, 364 F.3d 54, 59 (2d Cir. 2004) (affirming summary judgment in favor of defendants where plaintiff did not claim that incidents of harassment were physically threatening or humiliating, or that they interfered with her ability to do her job); *Quinn* v. *Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) ("As a general matter, isolated remarks or occasional episodes of harassment will not merit relief under Title VII[.]" (internal quotation marks omitted)), *abrogated in part on other grounds by Nat'l R.R.*

*Passenger Corp.* v. *Morgan*, 536 U.S. 101 (2002); *Hernandez* v. *Kaisman*, 957 N.Y.S.2d 53, 58 (1st Dep't 2012) (at the summary judgment stage, finding no severe or pervasive conduct where plaintiffs alleged, *inter alia*, that defendant, who was their supervisor, circulated inappropriate sexual emails, commented on plaintiffs' physical appearance, touched one plaintiff's rear end, and attempted to get one plaintiff to socialize with defendant's male friends); *cf.* *Aulicino* v. *N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) ("Core hostile work environment cases involve misconduct that is both frequent and severe, for example, when a supervisor utters blatant racial epithets on a regular if not constant basis and behaves in a physically threatening manner." (internal quotation marks omitted)).  Thus, the Court agrees with Defendant that even if Plaintiff's allegations were accepted as true, they do not describe an actionably hostile work environment.

*Second*, even if Plaintiff had adequately pleaded a severely or pervasively hostile environment — and she has not — Plaintiff also needed to establish a basis for imputing liability to Defendant.  An employer's liability for a hostile work environment claim depends on whether the underlying harassment is perpetrated by the plaintiff's supervisor or a non-supervisory coworker.  *See* *Wiercinski* v. *Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015).  When the offending employee is a non-supervisory coworker, "an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Petrosino* v. *Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004).  If,

however, harassment is perpetrated by a supervisor within the meaning of Title VII, the employer is strictly liable, "unless the employer is able to establish an affirmative defense showing that it exercised reasonable care to prevent and correct any harassing behavior and that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise." *Wiercinski*, 787 F.3d at 113 (internal quotation marks and alterations omitted).

Defendant focuses on the standard for employer liability when a non-supervisory employee is the alleged offender. (*See* Def. Br. 11-12). Assessing Plaintiff's Second Amended Complaint through this lens, the Court finds that it lacks any facts suggesting that Defendant "knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Petrosino*, 385 F.3d at 225. Plaintiff does not allege that Defendant was or should have been on notice of Mass's behavior before Plaintiff reported it to Human Resources in December 2017, or that Defendant looked the other way after Plaintiff reported Mass. Plaintiff's pleading instead suggests that Mass's advances towards Plaintiff ceased after she reported him to Human Resources, albeit replaced by other behavior to which Plaintiff objects. (*See* SAC ¶ 22 (stating that Mass "began to shun her")). Thus, Plaintiff has failed to plead sufficient facts supporting this basis for Defendant to be held liable for Mass's conduct.

Plaintiff, in contrast, argues that Defendant is strictly liable because "Mass exercised managerial or supervisory responsibility over Plaintiff (and

others)." (Pl. Opp. 9). An employee is a "supervisor" for purposes of the employer's vicarious liability under Title VII if he is empowered by the employer "to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance* v. *Ball State Univ.*, 570 U.S. 421, 431 (2013) (quoting *Burlington Indus.*, 524 U.S. at 761). Although Plaintiff states in her Second Amended Complaint that she reported to Mass and describes Mass as "her direct supervisor" (SAC ¶¶ 15, 22), she does not expressly plead that Mass had the authority "to take tangible employment actions against" her. *Vance*, 570 U.S. at 431. Nor are there other facts in her pleading from which the Court could infer that Mass had such authority; his title and supervision of Plaintiff's work alone are not sufficient. *See Vance*, 570 U.S. at 431 (rejecting "the nebulous definition of a 'supervisor' advocated in the EEOC Guidance" and adopted by some lower courts, which "tie[d] supervisor status to the ability to exercise significant direction over another's daily work").[3] Plaintiff candidly acknowledges this pleading deficiency in her opposition brief. (*See* Pl. Opp. 9 n.2 ("Though not pled in the complaint, …

---

[3]     Plaintiff pleads that Mass, in response to Plaintiff's complaint to Human Resources, "began to shun her, increased scrutiny of her work, and had his subordinates track Plaintiff and falsely accuse her." (SAC ¶ 22). Nevertheless, "Defendant never provided [] performance appraisals or evaluations which were critical of Plaintiff's work performance" or "disciplined Plaintiff for any alleged substandard work performance." (*Id.* at ¶¶ 23-24). These allegations suggest that Mass did not have the authority to take materially adverse employment actions against Plaintiff, but rather exercised only informal influence over her working conditions. Whether that was, in fact, true is irrelevant; the Court and Plaintiff are bound by what Plaintiff alleged.

Mass supervised approximately 11 employees and had input into their hiring and firing.  Thus, he is not a 'low level supervisor,' and Defendant bears strict liability for its 'tangible employment action' when it terminated Plaintiff.")).

Belatedly recognizing the consequence of this omission, Plaintiff now seeks permission to file a Third Amended Complaint to add these necessary details.  (*See* Pl. Opp. 9 n.2 ("If the Court deems it necessary, Plaintiff can file a third amended complaint detailing Bradley Mass' authority within Cantor, which results in strict liability under Title VII.")).  Given the Court's conclusion that Plaintiff has not pleaded a hostile work environment for which Defendant may be liable under Title VII and the NYSHRL, the envisioned amendment regarding Mass's status as supervisor would not save this claim.  The claim therefore must be dismissed with prejudice.  However, as discussed below, the addition of allegations regarding Mass's influence and authority over termination decisions at Cantor may well affect the viability of Plaintiff's *quid pro quo* harassment and retaliation claims.

### ii.    *Quid Pro Quo* Harassment

To state a claim for *quid pro quo* harassment, a plaintiff must plead that "she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions[,] or privileges of her employment."  *Karibian* v. *Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994).  "Because the *quid pro quo* harasser, by definition, wields the employer's authority to alter the terms and conditions of employment — either actually or apparently — the law imposes strict liability

on the employer for *quid pro quo* harassment."  *Id.*; *see also Jin* v. *Metropolitan Life Ins. Co.*, 310 F.3d 84, 96 (2d Cir. 2002) ("When a supervisor makes decisions affecting the terms and conditions of plaintiff's employment based upon her submission to his sexual advances, he uses his authority to effect, as the definition states, a significant change in employment status." (internal quotation marks and citations omitted)); *Carrero* v. *City of New York Hous. Auth.*, 890 F.2d 569, 579 (2d Cir. 1989) ("[T]he harassing employee acts as and for the company, holding out the employer's benefits as an inducement to the employee for sexual favors.").

Plaintiff argues that she "has pled that she was terminated for fabricated reasons after she rejected Bradley Mass' predatory propositions," and that "[t]his sufficiently pleads *quid pro quo* sexual harassment."  (Pl. Opp. 8).  To be sure, Plaintiff's allegations on this front are thin.  She does not allege that Mass used his professional authority over her to persuade her to accept his sexual advances, either by promising employment benefits if she complied or by threatening adverse action if she did not.  (*See generally* SAC).[4]  Nor does she expressly allege that, after she rejected his complaints, Mass brought about her termination by, for example, recommending that she be fired.  (*See id.*).  For this claim, her failure to plead that Mass had the power to influence personnel

---

[4]    Plaintiff's sole allegation in this respect is that Mass's fiancée, who does not work for Defendant, threatened to get Plaintiff terminated.  (SAC ¶ 21).  But there are no facts suggesting that Mass's fiancée had any power to carry out this threat or actually attempted to carry out this threat, or that the purpose of the threat was to coerce Plaintiff into acquiescing to Mass's advances.

decisions is consequential.  Without such allegations, the Court has no basis for inferring that Plaintiff's termination was the result of a *quid pro quo* situation — if Mass did not have the ability to get Plaintiff fired, then her termination could not have resulted from her rejection of him.  However, with additional facts about the scope of Mass's authority, such as those identified in Plaintiff's opposition brief, the Court could reasonably infer that, after Plaintiff rejected Mass's advances, Mass used his power to induce Defendant to terminate Plaintiff.  Thus, those details would be enough to save Plaintiff's *quid pro quo* claim from dismissal at this stage.  *See Swierkiewicz*, 534 U.S. at 514 ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.").

In sum, the Court dismisses Plaintiff's sexual harassment claims under theories of both hostile work environment and *quid pro quo* harassment. However, it dismisses the latter category without prejudice, and grants Plaintiff leave to amend her complaint to replead her *quid pro quo* allegations with the additional details proposed in her opposition brief.

### b.   Termination Based on Gender

To state a claim of gender discrimination under Title VII and the NYSHRL, Plaintiff must allege that: (i) she is a member of a protected class; (ii) she was qualified for her position; (iii) she suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *El-Din* v. *N.Y.C. Admin. for*

16

*Children's Servs.*, No. 12 Civ. 1133 (PAE), 2012 WL 3839344, at *4 (S.D.N.Y. Sept. 5, 2012) (citing *Gorzynski* v. *JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)).  "Circumstances that may 'give rise to an inference of discriminatory motive' include 'actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus,' as well as 'preferential treatment given to employees outside the protected class.'"  *Mesias* v. *Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 436 (S.D.N.Y. 2015) (quoting *Chertkova* v. *Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)).

It is undisputed that Plaintiff is in a protected class and that she suffered an adverse employment action when Defendant fired her.  (*See* Def. Br. 8).  However, Defendant argues that Plaintiff has not pleaded sufficient facts to make out a *prima facie* case that she was qualified for her position or that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  (*Id.* at 9).  Defendant points out that Plaintiff's Second Amended Complaint acknowledges that she was responsible for a compliance error that was the subject of two internal investigations and was cited by Defendant as the reason for Plaintiff's termination.  (*Id.*).  Plaintiff responds that she adequately pleaded that her work performance was always satisfactory and that Defendant's given reason for terminating her was pretextual.  (Pl. Opp. 13-14).

Even accepting Plaintiff's assertion that she was qualified for her position, the Court concludes that Plaintiff's gender discrimination claim under Title VII and the NYSHRL must be dismissed because she fails to plead facts

17

supporting a reasonable inference that Defendant fired her even in part based on her gender.  She does not allege any "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" towards women, or any "preferential treatment given to employees outside the protected class."  *Mesias*, 106 F. Supp. 3d at 436.  Plaintiff merely states that "Defendant's termination of Plaintiff had no legitimate reason," without providing any explanation of how her gender was supposedly the driving force instead.  (SAC ¶ 39).  Such conclusory allegations are not sufficient to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678-79.  Accordingly, the Court finds that Plaintiff has failed to state a claim under Title VII or the NYSHRL for discriminatory termination on the basis of her gender.  Because the additional facts that Plaintiff proposes to add to her Third Amended Complaint would have no effect on the viability of this claim, the Court further concludes that repleading this claim would be futile.  Therefore, the discriminatory termination claim is dismissed with prejudice.

### 2. Plaintiff Has Adequately Pleaded a Claim for Gender Discrimination Under the NYCHRL

As discussed above, the Court agrees only in part with Plaintiff's argument that she has sufficiently pleaded gender discrimination claims under Title VII and the NYSHRL.  Consequently, the Court analyzes her NYCHRL claims separately.  *See Mihalik*, 715 F.3d at 109.

In reviewing gender discrimination claims under the NYCHRL, federal courts are guided by several considerations: (i) the totality of the circumstances must be considered because the overall context in which the challenged

conduct occurs cannot be ignored; (ii) the federal severe or pervasive standard of liability does not apply to NYCHRL claims, and the severity or pervasiveness of conduct is relevant only to the scope of damages; (iii) the NYCHRL is not a general civility code, and a defendant is not liable if the defendant proves the conduct was nothing more than "petty slights or trivial inconveniences"; and (iv) while courts may still dismiss "truly insubstantial cases," even a single comment may be actionable in the proper context. *Mihalik*, 715 F.3d at 113. "[A] focus on unequal treatment based on gender — regardless of whether the conduct is 'tangible' (like hiring or firing) or not — is … the approach that is most faithful to the uniquely broad and remedial purposes of the local statute." *Williams* v. *N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 (1st Dep't 2009).

Assessing Plaintiff's allegations through this more protective lens, the Court concludes that Plaintiff has adequately pleaded a claim for gender discrimination. *See Williams*, 872 N.Y.S.2d at 38 ("[T]he analysis of the [NYCHRL] must be guided by the need to make sure that discrimination plays *no* role" in the workplace). A reasonable jury could conclude that, although not severe or pervasive harassment, Mass's alleged discussions with Plaintiff regarding his sexual relations with his fiancée and multiple sexual advances towards Plaintiff rose above the level of "petty slights or trivial inconveniences" given his supervisory role. *See Mihalik*, 715 F.3d at 113 ("Mihalik … had to suffer Peacock's unwanted sexual attention, including two sexual propositions. If a jury were to credit Mihalik's testimony, it could reasonably find that she was treated 'less well' than her male colleagues because of her gender, and that

19

the conduct complained of was neither petty nor trivial.").  Defendant's motion
to dismiss Plaintiff's gender discrimination claim under the NYCHRL is
therefore denied.

### 4.   Plaintiff Has Adequately Pleaded, or Can Adequately Plead, a Claim for Retaliation Under All Three Statutes

Finally, to state a claim of retaliation under Title VII and the NYSHRL,
Plaintiff must allege that: (i) she engaged in protected activity; (ii) Defendant
was aware of that activity; (iii) she suffered a materially adverse action; and
(iv) there was a causal connection between the protected activity and that
adverse action.  *Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,
716 F.3d 10, 14 (2d Cir. 2013) (per curiam).

Defendant does not dispute that Plaintiff engaged in a protected activity
when she reported Mass to Human Resources, that Defendant was aware of
her report to Human Resources, or that, as a general matter, termination
constitutes a materially adverse action.  (*See* Def. Br. 10-11).  But, Defendant
argues, Plaintiff provides only threadbare, conclusory allegations that there is a
causal connection between her protected activity and Defendant's decision to
fire her.  (*Id.* at 10).  Additionally, Defendant denies that any of the actions
Mass allegedly took following Plaintiff's complaint to Human Resources —
"shun[ning] her, increas[ing] scrutiny of her work, and [having] his
subordinates track Plaintiff and falsely accuse her" — constituted an adverse
employment action.  (*Id.*).  Plaintiff argues in response that the closeness in
time between her report to Human Resources and her termination —
approximately six weeks, from early December 2017 to mid-January 2018 —

and Defendant's decision to terminate her "based on false accusations" indirectly establish the required causal link between the protected activity and the adverse employment action.  (Pl. Opp. 15-18).

An employment action is materially adverse if it would have "'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 68 (2006) (quoting *Rochon* v. *Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  "Actions that are 'trivial harms' — *i.e.*, 'those petty slights or minor annoyances that often take place at work and that all employees experience' — are not materially adverse." *Tepperwien* v. *Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (quoting *Burlington N & Santa Fe Ry.*, 548 U.S. at 68).  "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Joseph* v. *Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006); *see also Brown* v. *City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).  "Alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct."  *Tepperwien*, 663 F.3d at 568 (citing *Hicks* v. *Baines,* 593 F.3d 159, 165 (2d Cir. 2010)).

Like her *quid pro quo* allegations, Plaintiff's retaliation allegations lack detail.  Defendant claimed to terminate Plaintiff based on her actions related to the restricted account and noncompliant transaction, actions that she

21

acknowledges taking.  (*See* SAC ¶¶ 27-31).  Although Plaintiff states in her Second Amended Complaint and opposition brief that Mass had his subordinates "falsely accuse her" and that her termination was based on such false accusations, she does not explain of what she was supposedly falsely accused or how the false accusations contributed to the termination decision. (*See id.* at ¶¶ 22, 47).  She draws no connections between and among the conduct by Mass and his subordinates, the Human Resources Department's handling of her complaint, and Defendant's decision to terminate her.  (*See generally id.*).  It is unclear whether Plaintiff's theory is that Mass and his subordinates made false accusations against Plaintiff so as to deceive senior decisionmakers at Cantor into believing she needed to be terminated, or that the individuals at Cantor who made the decision to fire her knew that she had done nothing wrong regarding the restricted account and transaction and fired her anyway because of the Human Resources report.  The linchpin of either theory is that Mass exercised his authority in some way to influence others to fire Plaintiff, but, as discussed above, Plaintiff does not explicitly plead that he did so.  Ultimately, Plaintiff alleges little beyond temporal proximity to support a connection between Plaintiff's conversations with Human Resources and her termination.  (*See* SAC ¶ 47 ("Defendant Cantor terminated Plaintiff less than two months" after she reported Mass's conduct with Human Resources)).

Nonetheless, the Court concludes that, along with the additional facts that Plaintiff proposes to add to a Third Amended Complaint regarding Mass's ability to influence termination decisions, the temporal proximity between

Plaintiff's report to Human Resources and her termination is enough to support an inference of a causal connection. *See Lovejoy-Wilson* v. *NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."); *Quinn*, 159 F.3d at 769 (finding that discharge less than two months after plaintiff filed a sexual harassment complaint with management and ten days after filing a complaint with state human rights office provided *prima facie* evidence of a causal connection between protected activity and retaliation); *but see Stoddard* v. *Eastman Kodak Co.*, 309 F. App'x 475, 480 (2d Cir. 2009) (summary order) ("[I]n the instant case, where the protected activity took place two months prior to the alleged adverse action, and where there is nothing other than that temporal proximity invoked to establish a retaliatory intent, the causal relationship is not established.").  Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's retaliation claims, but does so without prejudice, and grants Plaintiff leave to replead these claims to include additional details raised in her memorandum of law opposing Defendant's Motion to Dismiss.[5]

---

[5]    The standard for a retaliation claim under the NYCHRL is lower than the federal or state standard, as a plaintiff need not allege "materially adverse" action but instead only conduct that a jury could reasonably conclude was "'reasonably likely to deter a person from engaging in protected activity.'"  *Mihalik* v. *Credit Agricole Cheuvreux N. Am.*, Inc., 715 F.3d 102, 112 (2d Cir. 2013) (quoting Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85, § 3 (amending N.Y.C. Admin. Code § 8-107(7))).  Thus, Plaintiff's Title VII and NYSHRL retaliation claims, if successfully repleaded, will also satisfy the standard for her NYCHRL claim.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint is hereby GRANTED as to Plaintiff's sexual harassment and gender discrimination claims under Title VII and the NYSHRL (first and second causes of action); GRANTED as to Plaintiff's retaliation claims (third, fourth, and sixth causes of action); and DENIED as to Plaintiff's gender discrimination claim under the NYCHRL (fifth cause of action).

Plaintiff is GRANTED leave to amend her complaint to replead in greater detail her *quid pro quo* harassment claims under Title VII and the NYSHRL, her NYCHRL gender discrimination claim, and her retaliation claims under each of the three statutes.  Plaintiff's Title VII and NYSHRL claims of a hostile work environment and termination on the basis of gender are DISMISSED with prejudice.  Plaintiff's Third Amended Complaint shall be filed on or before **January 29, 2021**.

The Clerk of Court is directed to terminate the motion at docket entry 22.

SO ORDERED.

Dated:   January 8, 2021
         New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge

24